UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDIN KAHBASI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANTONY J. BLINKEN, *et al.*, <br><br> *Defendants*. | Civil Action No. 23-1667 (LLA) |

**MEMORANDUM OPINION**

Plaintiffs are four Iranian nationals who have applied for nonimmigrant visas to study or work in the United States. Contending that their visa applications were unreasonably delayed and unlawfully withheld, they brought suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants—various federal officials—to adjudicate their applications. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 3. For the reasons explained below, the court will dismiss certain Defendants under Rule 12(b)(1) and the remainder of the case under Rule 12(b)(6).

### I.      Background

The court draws the following facts, accepted as true, from Plaintiffs' complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

Plaintiffs Aidin Kahbasi, Naeem Nikroee, Seyyedehelnaz Ershadi, and Ahmadabadi Somayeh are Iranian citizens who have applied for nonimmigrant visas.[1] ECF No. 1 ¶ 20; ECF No. 1-2, at 3, 78, 112, 143. Mr. Kahbasi has applied for an F-1 visa, which grants foreign national students valid immigration status for the duration of a full course of study at an approved academic institution. ECF No. 1-2, at 3; 8 U.S.C. § 1101(a)(15)(F)(i). He has been accepted into the Civil Engineering PhD program at the University of Florida, and the delay in adjudicating his visa application threatens his funding for the program. ECF No. 1-2 at 3. Ms. Ershadi and Ms. Somayeh have applied for J-1 visas, which permit foreign nationals to participate in an approved program to teach or study. *Id.* at 112, 143; 8 U.S.C. § 1101(a)(15)(J). Ms. Ershadi secured a research and teaching position at North Carolina State University related to telecommunications antenna design, but the delay in visa processing could cause her to lose the job. ECF No. 1-2, at 112. Ms. Somayeh was invited to research and teach at East Carolina University. *Id.* at 143. She has been forced to explain the delays to her supervisor and suffered professional losses as a result of the delay. *Id.* Mr. Nikroee has applied for a J-2 visa, which allows spouses of J-1 visa holders to come to the United States. ECF No. 1-2, at 78; 8 U.S.C. § 1101(a)(15)(J). His wife moved to Washington D.C. to complete postdoctoral research at American University at the end of 2022; the couple has been physically separated since. ECF No. 1-2, at 78. The delay in adjudication has also caused all Plaintiffs to rebook travel arrangements and prevented them from attending professional events. *Id.* at 3-4 (Mr. Kahbasi), 78-79 (Mr. Nikroee), 112-13 (Ms. Ershadi), 143-44 (Ms. Somayeh).

---

[1] Two additional Iranian nationals were originally Plaintiffs in this action, but they voluntarily dismissed their claims after their visa applications were finally adjudicated. ECF No. 7.

2

Each visa type requires the applicant to complete numerous steps.  *See* U.S. Dep't of State, *Exchange Visitor Visa*;[2] U.S. Dep't of State, *Student Visa*.[3]  For example, applicants for a J-1 visa must fill out certain forms and demonstrate acceptance to an eligible program.  *See* U.S. Dep't of State, *Exchange Visitor Visa*.[4]  The applicant bears the burden of showing that they are eligible for the visa they seek.  8 U.S.C. § 1361.

Typically, an applicant for a nonimmigrant visa must undergo an in-person interview with a consular officer.  *Id.* § 1202(h).  At the end of a visa interview, State Department regulations require that the consular officer either issue or refuse the visa.  22 C.F.R. § 41.121(a); *see Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022).  However, if a consular officer determines that he needs further information, he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the Immigration and Nationality Act, which typically consists of additional information-gathering.  U.S. Dep't of State, *Administrative Processing Information*;[5] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).  Consular officers are forbidden from issuing visas to any individual from "a country that is a state sponsor of international terrorism" unless the federal government determines that the applicant "does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a).  Iran is designated as a state sponsor of terrorism.  U.S. Dep't of State, *State Sponsors of Terrorism*.[6]

---

[2] *Available at* https://perma.cc/4NX2-UDYS (last visited June 27, 2024).
[3] *Available at* https://perma.cc/53EQ-2TUJ (last visited June 27, 2024).
[4] *Available at* https://perma.cc/4NX2-UDYS (last visited June 27, 2024).
[5] *Available at* https://perma.cc/44NK-RVZE (last visited June 27, 2024).
[6] *Available at* https://perma.cc/7F3L-DP6X (last visited June 27, 2024).

Plaintiffs in the instant case paid the proper fees, submitted their applications, and underwent in-person interviews with consular officers at the U.S. Consulate in Dubai, United Arab Emirates in late 2022.[7]  ECF No. 1 ¶¶ 32-33.  All four were asked to provide additional information following their interviews and did so.  *Id.* ¶ 5; ECF No. 1-2, at 3, 78, 112, 143.  Plaintiffs were then informed that their visa applications were in a stage of administrative processing.  *Id.* ¶ 35.  The U.S. State Department's online "Visa Status Check" system lists their applications as "refused."  ECF No. 3, at 5-7; *see* ECF No. 1 ¶ 37 (stating that Plaintiffs' visa applications "remain refused and in '221g administrative processing' with the U.S. Consulate in Dubai").

In June 2023, Plaintiffs filed suit against numerous government officials in their official capacities: Antony J. Blinken, Secretary of State; Merrick Garland, Attorney General; Alejandro Mayorkas, Secretary of Homeland Security; Wendy R. Sherman, Deputy Secretary of State; Rena Bitter, Assistant Secretary for Consular Affairs; Richard C. Visek, Acting Legal Advisor at the State Department; Sean Murphy, Charge d'Affaires at the U.S. Embassy in Abu Dhabi, U.A.E.; Meghan E. Gregonis, Consul General at the U.S. Embassy in Dubai, U.A.E.; and Daniela G. Zadrozny, Consul at the U.S. Embassy in Dubai, U.A.E.  ECF No. 1, at 6-8.  In their two-count complaint, Plaintiffs seek an order compelling Defendants to adjudicate their visa applications under the APA, 5 U.S.C. § 555(b), and the Mandamus Act, 28 U.S.C. § 1361.  ECF No. 1 ¶¶ 43-64.

## II.     Legal Standard

Plaintiffs bear the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction

---

[7] Mr. Kahbasi completed his interview on October 31, 2022.  ECF No. 1-2, at 3.  Mr. Nikroee completed his interview on November 4, 2022.  *Id.* at 78.  Ms. Ershadi completed her interview on October 25, 2022.  *Id.* at 112.  Ms. Somayeh completed her interview on November 21, 2022.  *Id.* at 143.

under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the Plaintiffs' favor. *Id.*

### III.     Discussion

Defendants raise myriad arguments for dismissal under Rule 12(b)(1) and (b)(6), including arguments about standing, non-reviewability, non-justiciability, and failure to state a claim. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d 1; *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155 (D.D.C. 2022); *Siddiqui v. Blinken*, 646 F. Supp. 3d 69 (D.D.C. 2022).

#### A.     Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that Plaintiffs "must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the constitutional requirement for standing, Plaintiffs must

show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61). Defendants argue that Plaintiffs have not suffered an injury-in-fact, ECF No. 3, at 9-14; that there is no causal connection between the alleged injury and several of the Defendants, *id.* at 24-26; and that the alleged injury cannot be redressed by this court, *id.* at 14. The court disagrees.

First, as to injury, Defendants contend that Plaintiffs' suit is based on a procedural injury that is not connected to any substantive harm, primarily because Plaintiffs do not have a right to enter the United States. *Id.* at 9-13. Courts in this district have consistently rejected this argument, concluding that a plaintiff suffers an injury-in-fact when an unreasonable delay in visa adjudication causes financial or other hardship. *See e.g., Khan v. Blome*, 22-CV-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022); *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *3 (D.D.C. Feb. 12, 2024); *Rahman v. Blinken*, No. 22-CV-2732, 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023). Here, each Plaintiff has tethered the procedural right to timely visa processing to concrete monetary and reputational harms. As explained, Mr. Kahbasi risks a loss of funding for his academic program. ECF No. 1-2 at 3. Ms. Ershadi may lose a research and teaching position at North Carolina State University. *Id.* at 112. Ms. Somayeh has had to explain the delays to her supervisor, which has been "incredibly challenging." *Id.* at 143. And Mr. Nikroee has been unable to join his wife. *Id.* at 78. The delay in adjudication has additionally forced Plaintiffs to cancel and rebook travel arrangements and prevented them from attending professional events, causing professional setbacks. *Id.* at 3-4 (Mr. Kahbasi), 78-79 (Mr. Nikroee), 112-13 (Ms. Ershadi),

6

143-44 (Ms. Somayeh).  Those are sufficiently concrete harms to make this a "real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019)).

Next, Defendants argue that Plaintiffs have named certain officials—specifically, the Secretary of Homeland Security, Attorney General, Secretary of State, Deputy Secretary of State, Assistant Secretary for Consular Affairs, and Acting Legal Advisor—who cannot provide the relief Plaintiffs request and should be dismissed from the case.  ECF No. 3, at 24-26.  Whether construed as an argument about causation or redressability, the court concludes that Plaintiffs have not alleged sufficient facts to connect the Secretary of Homeland Security, Attorney General, or Acting Legal Advisor with the processing of their visa applications, such that they must be dismissed from the case.  While a close call, the court concludes that Plaintiffs have alleged sufficient involvement by the remaining contested Defendants to allow the case to continue against them.

"To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007).  Plaintiffs fail to make such a connection with the Secretary of Homeland Security, Attorney General, or Acting Legal Advisor because nothing in their complaint ties these individuals to the delays Plaintiffs are experiencing with their visa applications.  While the complaint alleges that the Secretary of Homeland Security and Attorney General play a role in "implementing the INA," ECF No. 1, ¶¶ 22-23, Plaintiffs do not allege any connection between those Defendants' implementation of

7

the INA and the visa delays at issue in this case.[8]  And while the complaint alleges that the Acting Legal Advisor "is charged with providing advice to the [State Department] on all legal issues," *id.* ¶ 26, Plaintiffs do not allege that the Legal Advisor provided any advice related to their particular visa applications.  "[A]bsent any specific allegations from Plaintiffs, the mere existence of [these] statutory provision[s] [are] too speculative and too attenuated a basis for this [c]ourt to assert jurisdiction" over these three Defendants.  *Rostamnia v. Blinken*, No. 23-CV-1638, 2024 WL 1328462, at *4 (D.D.C. Mar. 28, 2024).  They must be dismissed.

The situation differs with respect to the remaining contested Defendants, who are high-level officials in the State Department.  Defendants correctly acknowledge that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  But Plaintiffs do not seek to have their visa adjudications revised; rather, they seek to have the adjudications completed.  ECF No. 1, at 15, Prayer for Relief.  As numerous courts in this district have acknowledged, decisions on the merits are distinct from decisions about timing.  *Al-Gharawy*, 617 F. Supp. 3d at 10.  "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'"  *Id.* (quoting 5 U.S.C. § 555(b)).  Plaintiffs allege in their complaint that the Deputy Secretary of State acts as an "alter ego to the Secretary of State," affording her the same role in visa adjudication timing.  ECF No. 1 ¶ 24.  The Assistant Secretary for Consular Affairs also plays

---

[8] While plaintiffs in other cases have alleged that the Department of Homeland Security and/or the Attorney General can play a role in the visa process, Plaintiffs here have made no such allegation.  And even where plaintiffs in other cases have made such claims, they have been insufficient to survive a motion to dismiss.  *See Siddiqui*, 646 F. Supp. at 75.

a role, as she is "charged with overseeing the consular operations" in the State Department. *Id.* ¶ 25. Because these officials either do or could play a role in the pace of visa adjudications, an order from this court directing them to move more quickly would likely redress Plaintiffs' harms. *See Lujan*, 504 U.S. at 561. Accordingly, Plaintiffs have alleged the requisite connection between these Defendants and their alleged injury, and the case may proceed against them.

      Finally, Defendants contend that Plaintiffs' injuries are not redressable by this court because an order compelling "consular officers to re-adjudicate Plaintiffs' applications . . . will simply result in . . . refusal" pursuant to Section 1735, which forbids consular officers from issuing visas to any individual from a country that is a state sponsor of international terrorism, like Iran. ECF No. 3, at 14; 8 U.S.C. § 1735(a). Defendants add that such an order "will not redress Plaintiffs' supposed procedural harm (delay) or their ultimate harm (the inability to travel to the United States)." ECF No. 3, at 14. Defendants again miss the mark. "Courts in this District have routinely rejected this argument, which misunderstands . . . the relief Plaintiffs seek." *Rostamnia*, 2024 WL 1328462, at *3 (quoting *Rashidian*, 2024 WL 1076810, at *5). First, although Defendants allege otherwise, it is not set in stone that Plaintiffs' visas will ultimately be refused under Section 1735. Individuals from such countries may be issued visas if the federal government determines that the applicant "does not pose a threat to the safety or national security of the United States," 8 U.S.C. § 1735(a), and two former Plaintiffs in this very case were ultimately issued visas, ECF No. 7. Second, Plaintiffs seek final processing of their visa applications, which are "in suspended administrative processing." ECF No. 1 ¶ 5. An order by this court compelling adjudication of Plaintiffs' visas—not "re-adjudication," but rather completion of the process—would remedy Plaintiffs' injuries by freeing them from the interim "processing" stage.

### B.      Consular Nonreviewability, Non-Justiciability, and Non-Discretionary Duty

Defendants next raise a set of non-standing threshold challenges, including (1) that the doctrine of consular nonreviewability bars Plaintiffs' claims, ECF No. 3, at 26-30; (2) that "decisions relating to the exclusion of non-citizens abroad are not subject to judicial review," *id.* at 21-24; and (3) that Plaintiffs fail to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 15-20.  The court is unpersuaded.

First, Defendants argue that the doctrine of consular nonreviewability prevents this court from reaching the merits.  In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest*, 985 F.3d at 1024.  "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11.  Each of Plaintiffs' visa applications remains in administrative processing.  ECF No. 1 ¶ 37.  The doctrine thus does not apply.

Next, Defendants argue that a challenge to a condition of entry into the United States presents a non-justiciable question that this court cannot entertain.  ECF No. 3, at 21-24.  This appears to be a restatement of their argument about consular nonreviewability and fails for the same reasons.  To the extent Defendants are raising a broader argument that Plaintiffs have no recourse to complain about administrative delay because the ultimate decision might be non-justiciable, that cannot be squared with the APA, which allows a plaintiff to seek judicial review when an agency has failed to act.  5 U.S.C. § 706(1); *see Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004); *Ahmadi*, 2024 WL 551542, at *4 n.6.

10

Finally, Defendants argue that Plaintiffs have failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA. ECF No. 3, at 15 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). Defendants argue that Plaintiffs cannot identify a non-discretionary duty to adjudicate a visa application. ECF No. 3, at 15. Several courts in this district have reached a contrary conclusion, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian*, 2024 WL 1076810, at *5; *see, e.g.*, *Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); *Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *5-6 (D.D.C. Sept. 18, 2023). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023) *aff'd on other grounds*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). This court agrees with the majority view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei*, 2023 WL 6065095, at *6; *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

### C.  Unreasonable Delay

Arriving finally at the core of the case, Defendants argue that Plaintiffs have failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 3, at 30-39. Plaintiffs' claims under the APA and the Mandamus Act share the same standards for obtaining relief.

11

*Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"). Unreasonable delay is analyzed using six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Weighing the *TRAC* factors here, the court concludes that Plaintiffs have failed to state a claim on which relief can be granted.

The first two factors—requiring agencies to follow "a rule of reason" related to their timelines, and the influence of a Congressionally imposed timeline—are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). In essence, these two factors require the court to consider "whether 'there [is] any rhyme or reason—congressionally

12

prescribed or otherwise—for the agency's delay.'" *Rostamnia*, 2024 WL 1328462, at *5. In analyzing these factors, the court may consider the "the complexity of the task at hand." *See Da Costa*, 80 F.4th at 341 (quoting *Norton*, 336 F.3d at 1102). Both factors favor Defendants.

Plaintiffs suggest that there is a Congressional timeline based on 8 U.S.C. § 1571(b). ECF No. 4, at 7. That subsection provides:

> It is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b). However, as Plaintiffs acknowledge, this is "not a binding requirement." ECF No. 4, at 7. "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has found a four-year delay not unreasonable. *Da Costa*, 80 F.4th at 342. The court is satisfied that Defendants utilize a rule of reason that does not constitute unreasonable delay. Here, Plaintiffs had waited less than a year at the time they filed their complaint, and at the time of decision, will have waited less than two years. *See* ECF No. 1 ¶ 4. Although such a timeline may be frustrating, it does not constitute unreasonable delay when compared to relevant cases. The complexity of the task at hand— assessing whether Plaintiffs "pose a threat to . . . safety or national security" prior to issuing them visas, 8 U.S.C. § 1735(a), warrants careful processing of each application. *Ahmadi*, 2024 WL 551542, at *5.

The fourth TRAC factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also

favors Defendants.  *Da Costa*, 80 F.4th at 340 (quoting *TRAC*, 750 F.2d at 80).  The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Norton*, 336 F.3d at 1100 (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  Such would be the case here, where moving Plaintiffs to the front of the visa adjudication line would merely reorder all applicants with no change in the overall timeline.  To be sure, the backlog in visa adjudication is troubling and undoubtedly frustrating to Plaintiffs.  ECF No. 4, at 5.  But compelling Defendants to process Plaintiffs' visa applications presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021).  Plaintiffs present no argument to the contrary.  Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa adjudication context. *Arab*, 600 F. Supp. 3d at 71 (citing *Milligan*, 502 F. Supp. 3d at 319).  It would be improper for the court to intervene and expedite Plaintiffs' applications.  The fourth factor thus heavily weighs in favor of Defendants.

       The third and fifth factors concern the impacts of the delay on visa applicants, with the third factor identifying "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses[ing] the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80).  These factors weigh slightly in Plaintiffs' favor.  Plaintiffs have alleged real human and financial costs, including the potential loss of employment and other benefits from American universities, separation from a spouse, cancellation of travel arrangements, and an inability to attend professional events.  ECF No. 1-2, at 3-4 (Mr. Kahbasi), 78-79 (Mr. Nikroee), 112-13 (Ms. Ershadi), 143-44 (Ms. Somayeh).  But, while unfortunate, these setbacks do not threaten

Plaintiffs' physical health and wellbeing in a manner compelling enough to overcome the government's advantage on the more important factors.  *See DaCosta*, 80 F.4th at 344-45.

Finally, the sixth TRAC factor concerns "whether the agency's bad faith caused the delay." *Sawahreh*, 630 F. Supp. 3d at 164.  Plaintiffs do not allege bad faith, so this factor is neutral.  *See* ECF No. 1; ECF No. 4, at 12.

\*     \*     \*

As the D.C. Circuit explained in *DaCosta*, the delays in visa adjudications are "troubling." 80 F.4th at 344.  But after weighing the *TRAC* factors, the court concludes that Plaintiffs have not plausibly alleged that their delays are unreasonable.  Accordingly, the court will dismiss the complaint.

### IV.   Conclusion

For the foregoing reasons, the court will grant Defendants' motion to dismiss.  A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: June 27, 2024